EDITH H. JONES, Circuit Judge:
This court granted a certificate of ap-pealability to permit John Mayo’s appeal from a denial of § 2254 habeas relief on the claim that he was constructively deprived of legal counsel at a critical stage of his prosecution, the period during which a new trial could be sought. Texas courts denied relief on this claim, as did the federal district court. The issue before us, pursuant to AEDPA standards, is whether the state courts’ decision “was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States ...,” or was based on an unreasonable determination of the facts in fight of the state court record. 28 U.S.C. § 2254(d). Mayo rests his claim entirely on United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), and its progeny. Finding no basis to grant relief on these facts under Cronic, we affirm.
BACKGROUND
Mayo kidnapped, raped and sexually assaulted a Houston, Texas, woman in May 1989. He was convicted in March 1991 of aggravated kidnaping and aggravated sexual assault, and he received sentences of 20 and 50 years’ imprisonment, respectively, for those offenses.
The facts pertinent to this case, which we paraphrase, are succinctly reported by the state habeas court:[1]
Jacquelyn Barnes, a veniremember for Mayo’s trial, represented on her juror questionnaire that she had never been accused in a criminal case. Before the veniremembers were brought to the courtroom, the presiding judge in the central jury room asked whether they had ever been convicted of any felony or theft. Barnes either responded in the negative or remained silent; otherwise, she would not have accompanied the panel to the courtroom.
Mayo was represented at trial by retained counsel Paul Mewis, assisted by Cynthia Henley. Neither the prosecutor nor defense counsel asked the venire-members whether they had been convicted of any felony or theft, in reliance on the answers in the jury questionnaires and their knowledge that the veniremembers had already been qualified on this question in the central jury room. Barnes became a juror.
Unbeknownst to the parties and attorneys, Barnes had a final conviction for misdemeanor theft dating from 1977, which was discoverable as a public record in Harris County, Texas. Had Barnes disclosed her conviction during voir dire examination, the attorneys would have challenged her for cause, as she was absolutely disqualified from jury service under Texas law. Tex.Code CRiM. Proc. Ann. art. 35.19 (1989); Frame v. State, 615 S.W.2d 766, 769 (Tex.Crim.App.1981).
Mayo was convicted and sentenced. Mewis’s contract provided that his legal representation of Mayo would terminate with the jury’s verdict. After sentencing, Mayo indicated his desire to appeal. Be *338 cause Mewis did not handle appeals, he advised Mayo to hire another lawyer.
Mewis took no further action in the case because he assumed that Mayo would hire another lawyer. Neither Mewis nor Henley (as Mewis’s assistant) investigated jury misconduct, checked the local criminal records of the jurors, or investigated or filed a motion for new trial.
Mewis did not move to withdraw as counsel because he was unaware that Texas law required him to continue to represent Mayo following conviction until such time as the court permitted him to withdraw or substituted counsel. Ex parte Axel, 757 S.W.2d 369, 373-74 (Tex.Crim. App.1988).
Nevertheless, when Mewis had not heard from a prospective appellate lawyer after about three weeks, he met with Mayo in jail to determine whether another lawyer had been hired. Mayo said he was indigent. On April 4, 1991, three days before the time expired to file a motion for new trial and notice of appeal, Mewis assured that Mayo was brought to court, that he filed a notice of appeal, and that he signed an indigency affidavit requesting court-appointed appellate counsel. That same day, the court appointed Will Gray as appellate counsel and mailed him notice of the appointment. Gray did not, however, learn of his appointment until the time had expired to file a motion for new trial.
No attorney discovered Barnes’s theft conviction in time to file a motion for new trial or to raise the issue on appeal. Had counsel filed a motion for new trial and proven that Barnes was absolutely disqualified from serving as a juror, the trial court would have had to grant a new trial, or the conviction would have been reversed on appeal. Thomas v. State, 796 S.W.2d 196, 197 (Tex.Crim.App.1990); State v. Holloway, 886 S.W.2d 482, 484 (Tex. App.—Houston [1st Dist.] 1994). Under Texas law, however, Mayo is not entitled to obtain habeas corpus relief on a claim involving a disqualified juror. Thomas, 796 S.W.2d at 199; Ex parte Bronson, 158 Tex.Crim. 133, 254 S.W.2d 117, 121 (Tex.Crim.App.1952)
The state habeas court concluded that Mayo “was not denied assistance of counsel during the time for fifing a motion for new trial, as Paul Mewis remained attorney of record.” The Texas Court of Criminal Appeals denied Mayo’s application for habeas corpus relief without written order on the findings of the trial court. The federal district court denied relief under § 2254, and this appeal followed after a COA was granted.
DISCUSSION
This case turns on whether the state courts’ conclusion that Mayo was not denied the assistance of counsel during the period for filing a new trial motion was an unreasonable application of Federal law, as established by the Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).
Mayo’s argument begins with the proposition that criminal defendants are constitutionally entitled to effective assistance of counsel at every “critical stage” of prosecution and through the conclusion of direct appeal. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Evitts v. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). A defendant whose attorney provides no meaningful assistance may, however, be constructively denied the assistance of counsel. United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657. (1984). In Mayo’s view, his lawyer’s failure to research or file a motion for new trial was the equivalent *339 of denying him counsel for the purpose of challenging Ms. Barnes’s qualifications as a juror.
The initial problem with this argument is that, from the standpoint of AEDPA, its conclusion does not necessarily follow from its premises. New precedents exist explaining whether the period for filing a motion for new trial is a “critical stage” of prosecution to which the right to counsel attaches. The Texas Court of Criminal Appeals, for instance, expressly withheld ruling on that issue, although lower Texas courts have described the post-trial period as “critical.” Compare Prudhomme v. State, 28 S.W.3d 114, 121 (Tex.App.—Texarkana 2000), with Smith v. State, 17 S.W.3d 660, 663 n. 3 (Tex.Crim.App.2000), and Oldham v. State, 977 S.W.2d 354, 360-61 (Tex.Crim.App.1998). Several federal courts of appeals have held that there is no constitutional right to counsel for post-appeal motions for new trial. United States v. Tajeddini, 945 F.2d 458, 470 (1st Cir.1991), abrogated on other grounds by Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000); United States v. Lee, 513 F.2d 423, 424 (D.C.Cir.1975); United States v. Birrell, 482 F.2d 890, 892 (2d Cir.1973). But three federal courts of appeals have held, on particular facts, that the motion for new trial phase is a critical stage of the prosecution. Kitchen v. United States, 227 F.3d 1014, 1018-19 (7th Cir.2000); Robinson v. Norris, 60 F.3d 457, 459-60 (8th Cir.1995); Menefield v. Borg, 881 F.2d 696, 699 (9th Cir.1989). The district court here seized on the absence of “clearly established Federal law, as determined by the Supreme Court ....,” and concluded that the period for filing a motion for new trial is not clearly a critical phase; hence, the state courts did not unreasonably reject Mayo’s habeas claim.[2]
Unfortunately for Mayo, his position succeeds only if the right to counsel clearly and fully attaches to the post-trial, pre-appeal phase of prosecution. But it is unnecessary, in resolving this appeal, to render such a broad decision.[3] Instead, *340 we focus on the state court finding that Mayo was not denied counsel during the post-trial phase. This finding is not legally or factually unreasonable. Under Texas law, Mewis was bound to represent Mayo until the trial court permitted him to withdraw or appointed a new attorney.[4] That Mewis was unaware of his legal responsibility does not transform an error into the “denial” or “absence” of counsel. Mewis in fact represented his client post-trial by taking steps to ensure the appointment of appellate counsel.
The only asserted flaw in Mewis’s legal representation was his failure to investigate the criminal records of Mayo’s jury, to unearth a thirteen-year-old misdemeanor conviction of one juror, and to use that technicality to obtain a mistrial or new trial. For two reasons, this omission has no constitutional significance.
First, even if Mewis should have investigated the jurors’ criminal histories, the investigation need not have awaited the outcome of trial. Mewis could have questioned the jurors on the subject during voir dire exam. Indeed, the voir dire examination provided the best opportunity to reveal disqualifying characteristics. Moreover, Mewis, armed with copies of the juror questionnaires, could have begun an investigation of the seated jurors by means of outside sources as soon as trial commenced. While the deadline for filing a motion for new trial fixes a completion date under Texas procedure for such an investigation, it does not constrain the initiation of inquiries into jurors’ criminal records. There is no necessary connection between Mewis’s alleged oversight and the post-trial period. This lack of connection is irreconcilable with any Cronic claim regarding that period.
Second, the facts demonstrate why Mayo declines to characterize his claim as resting on the Strickland test for constitutionally deficient legal representation. A Strickland claim arises only if the attorney’s error falls outside the bounds of professional reasonableness. Strickland, *341 466 U.S. at 688, 104 S.Ct. at 2065. Mewis did not question prospective jurors about their criminal histories because he relied on pre-qualification for that precise point. Pre-qualification took place by means of written questionnaires and inquiries by the judge who conducts juror screening in the Houston courts’ central jury room. It was not professionally unreasonable to rely on this dual screening mechanism. Surely the best evidence of the reasonableness of Mewis’s conduct lies in the fact that the prosecutor, who had as much to lose as Mayo had to gain from the belated identification of an unqualified juror, also relied on the pre-screening techniques. If Me-wis’s actions in failing to ask venire-members about possible criminal records were not professionally unreasonable, it follows that the failure to conduct post-trial investigation and file a motion for new trial cannot have been deficient.[5]
Our conclusion may be stated narrowly. Whether or not the right to counsel attaches for some purposes during the post-trial, pre-appeal phase of the prosecution, Mayo was not constructively denied the assistance of counsel for purposes of filing a new trial motion solely to assert the disqualification of a juror, where (a) the disqualification might have been discovered earlier, and (b) Mayo’s attorney could reasonably rely on Harris County’s juror pre-screening procedures. The state courts did not unreasonably apply clearly established Federal law or reach unreasonable findings of fact in denying Mayo relief from his conviction.[6]
The judgment of the district court is AFFIRMED.

. The state court held a hearing on July 24, 1997, and prepared its findings of fact and conclusions of law based on testimony and documentary evidence.

. Mayo proceeded in state court and in this court solely on the theory that he was denied counsel pursuant to Cronic and not, under Strickland, that his attorney was constitutionally ineffective.

. The broad question has no clearcut practical answer. Having counsel during the motion for new trial phase may or may not be necessary to preserving the defendant’s rights to a fair trial and effective appeal. Investigating juror misconduct, for instance, may be, but is not necessarily, feasible only after the jury has been discharged. Another type of post-trial motion may challenge the effectiveness of trial counsel, but such a claim may better be raised in a habeas corpus petition, after the results of the alleged errors have been ascertained on appeal. Other types of claims may justify the discretionary grant of a new trial but need not be raised in that fashion in order to preserve them for appeal. Hence, unlike phases of the prosecution during which attorney representation has been deemed "critical” by the Supreme Court— arraignment; gaps in trial that afford the opportunities for consultation with the defendant; the introduction of evidence pertinent to the defendant; direct appeal — the post-trial, pre-appeal phase seems, in the absence of a specific claim, to demand representation by counsel at a minimum only for filing a timely notice of appeal. (Mewis fulfilled his responsibility to Mayo for this purpose.)
Accordingly, to grant Mayo’s petition would extend the Supreme Court’s decision in Cronic. The Court explained in Cronic that a criminal defendant, even though formally represented by counsel, may suffer an actual or constructive denial of representation in three circumstances: where counsel is totally absent or is prevented from assisting the accused during a critical stage; where counsel has a conflict of interest; and where counsel entirely fails to subject the prosecution’s case to meaningful adversarial testing. The circumstances of denial must justify a presumption of prejudice. Cronic, 466 U.S. at 659, 104 S.Ct. at 2046. In Burdine, this court held that when defense counsel slept for "not insubstantial periods of time” during the guilt *340 phase of the capital murder trial, the defendant was constructively denied counsel. Burdina v. Johnson, 262 F.3d 336, 341 (5th Cir.2001) (en banc). Nothing in the majority opinion in Burdina speaks to a Sixth Amendment claim arising in the post-trial, pre-ap-peal phase of a non-capital prosecution. Further, as has been shown, a priori judgment about the necessity of counsel during that phase is impossible. Under the terms of Cronic or Burdina, then, Mayo’s broad claim fails for lack of a demonstration that prejudice is so likely to occur if counsel is "absent” during this phase as to render individual consideration of claims unnecessary. Since . Cronic as presently understood does not support a holding that the right to counsel inevitably continues during the post-trial phase of prosecution, the Teague doctrine would pose a bar to its extension here. Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Even in Burdine, the court, conscious of Teague, went out of its way both to explain that it articulated no "new rule” and to limit the decision to its specific facts. Burdine, 262 F.3d at 349. Burdine offers no hope that other habeas defendants may succeed in obtaining case-specific relief under Cronic or Teague.

. Mayo's argument proves too much by conflating the attorney’s alleged error or misjudgment with "denial” or "absence” of counsel under Cronic. Cronic went out of its way to stress that "only when circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel’s performance at trial.” Cronic, 466 U.S. at 662, 104 S.Ct. at 2048. The alleged error here was not so temporally tied to the post-trial, pre-appeal phase as to justify a presumption of ineffectiveness at that stage. Cases relied on by Mayo are thus not on point because the denial of counsel and attorney incompetence on appeal, respectively, in those cases inevitably undermined the defendant’s right to a first appeal. See Blankenship v. Johnson, 118 F.3d 312 (5th Cir.1997); Lombard v. Lynaugh, 868 F.2d 1475 (5th Cir.1989).

. That Mayo's conduct did not violate Strickland reinforces the conclusion that no basis for a presumption of prejudice — the prerequisite of a denial of counsel under Cronic— exists here.

. The dissent finds unreasonable the state’s conclusion that Mayo was represented by counsel during the post-trial, pre-appeal phase. The dissent bases its view on attorney Mewis’s affidavit revealing his ignorance of the requirements of Texas law. Under the dissent’s alchemy, it is hard to see how the line between Cronic and Strickland errors could be drawn, with the result that petitioners’ heavy burdens of proving Strickland deficiency and prejudice would be lightened to the Cronic standard of "absence” and presumed prejudice. Were the dissent’s position correct, the magnitude of Mayo’s windfall here would be striking, since Mewis’s conduct, which did not rise to the level of deficient representation under Strickland, would transmute into a habeas-demanding Cronic error.