# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 6, 2011

No. 08-41230

Lyle W. Cayce
Clerk

CHARLES FRANKLIN MCAFEE, JR.,

Petitioner-Appellant,

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH, and ELROD, Circuit Judges.

PER CURIAM:

Charles Franklin McAfee, Jr., Texas prisoner # 1207010, was convicted in state court of aggravated robbery and sentenced to twenty-eight years of imprisonment. This court granted a certificate of appealability to allow McAfee's appeal from the district court's denial of habeas relief on the following two issues: (1) whether McAfee's trial counsel was constitutionally ineffective during McAfee's hearing on his motion for new trial, and (2) whether the state district court denied McAfee a fair hearing by failing to grant his motion to dismiss trial counsel until after the hearing on the motion for new trial. We AFFIRM.

No. 08-41230

I

McAfee was convicted of robbing a cashier, Raye Ann Clark, with a knife, at the Rush-In Grocery, a convenience store in Santa Fe, Texas, on Saturday, June 8, 2002 at 5:20 A.M. At trial, the state presented the testimony of one eyewitness, Clark, the victim. Clark testified that McAfee entered the store and began looking at oil while she waited on another customer. After the customer exited the store, McAfee brought the oil up to the counter. As Clark examined the oil to locate its price, McAfee pulled out a knife and asked her if she had ever been robbed. McAfee then jumped up onto the counter, asked Clark to open the cash drawer, and ordered her to go to the cooler. As McAfee left the store, Clark saw a Ford Bronco exit the driveway. She then called the police.

Several members of the Santa Fe police department arrived at the convenience store. Clark gave the officers a description of the robber and the vehicle. She testified that, when giving the police a description of the robber, she was indecisive because she was "traumatized and in shock," stating "I thought he had dark hair or he had a mustache or had a goatee. I wasn't real sure." Captain G. Keith Meenen, one of the responding officers, testified at trial that Clark described the robber as a white male, approximately six feet tall, blond to brown hair, with a mustache. Clark also described the vehicle as a two-tone Ford Bronco 2 but could not recall the colors. Sergeant O'Briant, also a responding officer, attested that he took prints off the counter and the door but they were not readable.

Almost six months later,[1] McAfee became a suspect when a patrol officer pulled him over in a two-tone Ford Bronco 2 for a traffic violation. The officer

_____

[1] The state court's rendition of the facts indicates that McAfee become a suspect "almost six months later," but Captain Meenen's trial testimony notes that McAfee became a suspect "in the middle of June." *See McAfee v. State*, No. 01-03-01041-CR, 2004 WL 2966361, at *1 (Tex. App.—Houston [1st Dist.] Dec. 23, 2004, pet. denied) (not designated for publication).

noted the similarities between the description of the robber and the vehicle to McAfee and his car.  A short time later, Clark identified McAfee out of a six-person photographic lineup.  She also identified him in the courtroom at trial.  The state also submitted a videotape from the convenience store security camera into evidence.

McAfee's counsel presented two witnesses at trial, McAfee and his friend Blaine Carmichael.  Carmichael asserted that he was McAfee's neighbor in Houston, Texas.  He recalled how, on the night of June 7, 2002, he celebrated his birthday with his friends.  Among those friends was McAfee.  Carmichael attested that McAfee joined the party at around midnight at Duster's Saloon, and drank with him until the bar closed at around 2:15 A.M. on June 8, 2002.  They then all drove to Carmichael's home to continue the festivities, with McAfee following them in his car.  However, upon arriving at Carmichael's home at around 2:45 A.M., McAfee retired for the evening and went into his house, which was a trailer behind Carmichael's home.  Carmichael testified that he and his friends stayed out in front of his house drinking till 4:30 A.M., although one of his friends, Chad Jones, left at 3:30 A.M.  Carmichael indicated that he did not see McAfee leave the property,[2] and indeed, saw him around 8:00 or 9:00 A.M., when McAfee pounded on Carmichael's door requesting a pot of coffee.[3]  Carmichael also attested that McAfee had a mole on his face and that he sported a goatee and not a moustache, and that it took approximately one hour to drive from his home in Houston to the Santa Fe area.

---

[2] Carmichael testified that he would have heard his neighbor's two dogs bark or seen the headlights on McAfee's car, if any car had left the property, but admitted that it was possible that he would not have seen McAfee leave, noting "[w]e were sitting right here.  I'm sure I would have heard him.  I can't say it's not impossible."

[3] The district court incorrectly stated that Carmichael testified seeing McAfee "around 8:00 or 9:00 A.M. on June 9," when in fact the testimony is that Carmichael saw him around 8:00 or 9:00 A.M. on June 8, the same morning as the robbery. *See McAfee v. Quarterman*, No. G-07-0361, 2008 WL 4415225, at *1 (S.D. Tex. Sept. 23, 2008).

No. 08-41230

McAfee testified that after the party moved to Carmichael's property, he drove to the trailer behind Carmichael's home and did not leave until he asked Carmichael for a pot of coffee the following morning.  McAfee denied traveling to Santa Fe in the early morning of June 8, 2002 and robbing the Rush-In Grocery.

After deliberating, the jury found McAfee guilty as charged.  The court sentenced McAfee to twenty-eight years of imprisonment.  McAfee immediately informed the state district court that he wanted to file a motion for new trial.  McAfee's counsel, Michael Donahue, noted that he would file the motion but would not represent McAfee on appeal.

On June 13, 2003, over a month before his hearing on the motion for new trial, McAfee filed a motion to dismiss his court-appointed counsel, Donahue.  McAfee asserted that Donahue "has failed and continues to fail to represent the defendant in an effective, concerned, independent manner."  McAfee specifically listed "conflict of interest" as one of his complaints regarding Donahue's representation, and he stated that Donahue had "misled" him.  He requested that his counsel be dismissed, and he sought the appointment of new counsel.  The motion also included McAfee's declaration of his intent to file a formal grievance with the State Bar of Texas.  McAfee also filed a pro se notice of appeal, leaving blank the name and address of the defense attorney on appeal.

On the same day that McAfee filed his motion to dismiss court-appointed counsel, Donahue filed a motion for new trial on the grounds that the evidence was insufficient to support the conviction, and for reasons which were listed on Exhibit A.  Exhibit A consisted of a handwritten list of McAfee's complaints about his trial, including a claim that Donahue had provided ineffective assistance of counsel.  Exhibit A did not address the reasons underlying McAfee's allegations regarding Donahue's ineffectiveness, as the document

4

stated that listing them would "cause conflict of interest." The document instead referred to the motion to dismiss counsel.

The state court declined to rule on McAfee's motion to dismiss Donahue, prior to the hearing on McAfee's motion for new trial, and Donahue supposedly represented McAfee at the hearing on August 5, 2003. At the hearing, McAfee contended that Donahue had rendered ineffective assistance of counsel at trial for, among other things, failing to call witnesses. McAfee stated that he had "affidavits from people you told not to show up in Court," and alleged that Donahue had showed potential witnesses video from the convenience store security camera and asked repeatedly, "Isn't that Charles," thereby discouraging them from coming to court to testify on McAfee's behalf.[4]

The transcript of the motion-for-new-trial hearing reads like a primer on what not to do as an attorney. Donahue attacked McAfee's ineffectiveness claim throughout the hearing by vigorously defending his representation. He also accused his client of lying many times throughout the hearing, "As far as me saying I didn't know what to do, that's nonsense. That's nonsense. That's a complete lie . . . a total lie;" he referred to McAfee's testimony at the hearing as a "bold faced lie;" and interrupted McAfee with barbs like, "That is not correct. That's not true." He impugned the merits of the case, "This case had a real troubling strategy problem," and repeatedly referred to the motion for new trial as "Mr. McAfee's motion," or "your motion." The court even sustained two of McAfee's objections to the testimony of his own counsel, Donahue, once on the ground that it was hearsay, and once on the ground that it was privileged. Donahue interrupted McAfee numerous times, refusing to let McAfee testify on the motion. Indeed, Donahue's conduct compelled the state court to admonish

---

[4] No affidavits were submitted with the motion for new trial or at the hearing. However, McAfee did submit affidavits, dated after the hearing, with his state habeas petition.

No. 08-41230

him multiple times, stressing that his testimony was inappropriate because he was still acting as McAfee's counsel, "Wait a minute, Mr. Donahue. If you say anything in conflict with your client's defense . . . . You are still his attorney. Anything you say doesn't help his case. . . . There is an attorney-client privilege and you cannot breach that privilege, even if he has said he had ineffectual counsel."

Halfway through the hearing, McAfee conducted his own cross-examination of a state witness, with Donahue doing the re-direct, attempting to undermine McAfee's motion and arguments. Finally, the court, exasperated by Donahue's behavior, issued an ultimatum towards the end of the hearing, "One more time, if you interrupt another witness while they are arguing, while they are testifying or making an argument, I am going to ask you to leave the courtroom and when they are done you can come back in and read the transcript, because you are just being rude to everybody. Just stop."

After the hearing, the state district court granted the motion to remove counsel as attorney of record and denied the motion for new trial. McAfee subsequently filed a grievance with the State Bar of Texas—the Grievance Committee reprimanded Donahue, noting that by attempting to "defend the ineffective assistance of counsel allegations at the Hearing on the Motion for New Trial," Donahue "thwarted his client's attempt to obtain a new trial."

On direct appeal, McAfee sought relief on grounds that the state district court erred in granting the State's request to amend the indictment on the day of trial and that he was denied the effective assistance of counsel at trial because, *inter alia*, counsel failed to call potential alibi witnesses. *See McAfee*, 2004 WL 2966361, at *1. In affirming the state district court's judgment, the intermediate state appellate court found that McAfee's counsel waived his complaint regarding amendment of the indictment and the lack of ten-day notice, and that, at the motion-for-new-trial hearing, McAfee "failed to introduce

6

any evidence that these witnesses were available and that his defense would have benefitted from their testimony." *Id*. at *2-4.

McAfee then filed a state habeas application seeking relief on a number of grounds, including ineffective assistance of counsel at the motion-for-new-trial hearing due to conflict of interest, and error by the state district court for failing to grant McAfee's motion to dismiss counsel until after the motion-for-new-trial hearing. Attached to his state habeas application were affidavits from two potential witnesses, Tresia Alberts Ruiz and Chad Jones.

Tresia Alberts Ruiz attested that after McAfee was arrested, she spoke with Donahue on the phone and told him that she had been with McAfee until midnight on the night of June 7, 2002. McAfee had invited her to come with him to Carmichael's birthday party later that night but she had declined the offer because she had work the next day. She stated that she was with McAfee, at his place in Houston, on Saturday, June 8, 2002—"I arrived there at 6:30 and stayed until 9:30 am on Sunday morning." Ruiz indicated to Donahue that she was available to testify on McAfee's behalf that she was with him that weekend. According to Ruiz, Donahue told her that the district attorney would be "real hard" on her. She stated that she still wanted to testify. Donahue stated that he would contact her once a trial date had been set, which he expected to be six to twelve months away. Ruiz indicated that she was not notified of the trial and that she was upset when she learned of the conviction.

Chad Jones attested that he met McAfee's counsel, Donahue, on June 3, 2003, the day before Jones was supposed to testify at McAfee's trial. Jones stated that he was celebrating Carmichael's birthday at Duster's Saloon the night of June 7, 2002, and in the early hours of June 8, 2002. He indicated that McAfee arrived at Duster's around 12:20 A.M. on June 8, 2002, and stayed until Duster's closed. Jones stated that he knew McAfee had a trailer behind Carmichael's house, and that he saw McAfee drive toward that direction. Jones

No. 08-41230

further explained that Donahue showed him the video tape of the robbery and told Jones that he thought the robber looked like McAfee, saying that it "sure looks like Charles to me." Jones attested that he did not think the robber in the video tape looked at all like McAfee and felt like Donahue was trying to discourage him from testifying at trial. On the day of the trial, Jones arrived in court but was not called to testify. Jones expressed frustration at Donahue because he had been subpoenaed and taken off work to testify on McAfee's behalf.[5]

The state district court entered findings of fact on petitioner's claims, including the following on his ineffective assistance of counsel claims: "Applicant's trial and appellate attorneys delivered reasonably effective assistance of counsel. Applicant has failed to show if counsel had acted as he now asserts they should have, such as addressing the indictment issue or having Mr. Jones and Ms. Ruiz testify for Applicant, the outcome of this case would have likely been different." On January 17, 2007, the Texas Court of Criminal Appeals denied the application on the district court's findings without a written order or a hearing. *Ex parte McAfee*, WR-65,926-01 (Tex. Crim. App. Jan 17, 2007).

McAfee filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his underlying conviction for aggravated robbery. The district court, in a thorough and well-written opinion, denied McAfee federal habeas relief. This court then granted McAfee a certificate of appealability on two issues: (1) whether McAfee's trial counsel was constitutionally ineffective during McAfee's

_____

[5] Donahue attested in the state habeas proceedings by affidavit that he interviewed Jones but did not call him because Jones did not indicate that he had seen McAfee on Carmichael's property. Donahue also attested that he spoke with Ruiz but that neither McAfee nor Ruiz told him that Ruiz was at McAfee's house on Saturday morning at 6:30 A.M. He indicated that he asked Ruiz to attend the bond hearing but she did not appear in the courtroom.

No. 08-41230

hearing on his motion for a new trial, and (2) whether the state district court denied McAfee a fair hearing by failing to grant his motion to dismiss trial counsel until after the hearing on the motion for new trial. Finding no basis to grant relief on these facts under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), we AFFIRM.

## II

This court has not yet determined whether the right to counsel attaches on a motion for new trial. *See Mayo v. Cockrell*, 287 F.3d 336, 339-40 & 339 n.3 (5th Cir. 2002). Therefore, before we can discuss either issue on appeal, this court must first determine whether McAfee had a Sixth Amendment right in Texas to the assistance of counsel on the motion for new trial during the post-trial, pre-appeal period.

The Supreme Court has long recognized that the right to counsel is among the most fundamental rights of our criminal justice system, "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other right he may have." *Penson v. Ohio*, 488 U.S. 75, 84 (1988). It is well-settled that a defendant's right to counsel attaches "at or after the time adversary judicial proceedings have been initiated against him," *Kirby v. Illinois*, 406 U.S. 682, 688 (1972), and once the right attaches, it continues to apply at every critical stage of the proceedings. *E.g., United States v. Cronic*, 466 U.S. 648, 659 (1984); *Estelle v. Smith*, 451 U.S. 454, 474 (1981) (psychiatric interviews); *Mempa v. Rhay*, 389 U.S. 128, 134 (1967) (sentencing); *United States v. Wade*, 388 U.S. 218, 224-25 (1967) (pre-trial line-up); *White v. Maryland*, 373 U.S. 59, 60 (1963) (preliminary hearings); *Douglas v. California*, 372 U.S. 353, 355-56 (1963) (appeals). Once the direct appeal has been decided, however, the right to counsel no longer applies. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).

No. 08-41230

The Supreme Court has articulated that a critical stage in the proceeding is one where "the accused required aid in coping with legal problems or assistance in meeting his adversary," and the "substantial rights of the accused may be affected." *See United States v. Ash*, 413 U.S. 300, 311, 313 (1973); *Rhay*, 389 U.S. at 134-35.

Every federal circuit court to address the question of whether the post-trial, pre-appeal time period for making a motion for new trial is a critical stage has concluded that it is. *See, e.g.*, *Kitchen v. United States*, 227 F.3d 1014, 1019 (7th Cir. 2000) (holding that there is a right to counsel for a Rule 33 pre-appeal motion for a new trial); *Williams v. Turpin*, 87 F.3d 1204, 1210 & n.5 (11th Cir. 1996) (holding that, because under Georgia law, an ineffective-assistance claim, if not made in a motion for new trial, is waived on direct appeal, "the motion for new trial is a critical stage"); *Robinson v. Norris*, 60 F.3d 457, 460 (8th Cir. 1995) (holding that defendant had a right to counsel on a motion for new trial in order to raise his ineffective-assistance claim); *Menefield v. Borg*, 881 F.2d 696, 699 (9th Cir. 1989) (holding that there is a right to counsel, in California, on a post-trial, pre-appeal motion for new trial). In addition, two other circuits have held that "the hiatus between the termination of trial and the beginning of an appeal" is a critical stage. *Nelson v. Peyton*, 415 F.2d 1154, 1157 (4th Cir. 1969)*; Baker v. Kaiser*, 929 F.2d 1495,1499 (10th Cir. 1991) (quoting *Nelson*, 415 F.2d at 1157).[6]

---

[6] Three circuits have held that there is no constitutional right to counsel for *post-appeal* motions for new trial because they are collateral attacks. *See United States v. Tajeddini*, 945 F.2d 458, 470 (1st Cir.1991), *abrogated on other grounds by Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *United States v. Lee*, 513 F.2d 423, 424 (D.C. Cir. 1975); *United States v. Birrell*, 482 F.2d 890, 892 (2d Cir. 1973). However, no circuit court has held that the post-trial, pre-appeal time period for filing a motion for new trial is not a critical stage.

No. 08-41230

Each of these circuits[7] looked to the effect of a motion for new trial in the particular state at issue. They applied clearly established law—the right to the assistance of counsel at critical stages—to the facts of each case. *See Hamilton v. Alabama*, 368 U.S. 52, 53 (1961). In *Hamilton*, the Supreme Court held that "arraignment under Alabama law is a critical stage in a criminal proceeding." *Id.* Therefore, the Court in *Hamilton* made clear that determination of what was a "critical stage" rested upon the facts of each case. *See id.* at 54. It acknowledged that arraignments in other jurisdictions may not be critical.[8] *Id.*

Thus, the proper inquiry here is whether a motion for new trial during the post-trial, pre-appeal time period in Texas state court is a critical stage as a matter of federal constitutional law. *Hamilton*, 368 U.S. at 53 (Alabama); *see also Turpin*, 87 F.3d at 1210 & n.5 (Georgia); *Robinson*, 60 F.3d at 460 (Arkansas); *Menefield*, 881 F.2d at 699 (California).

---

[7] The exception is the Seventh Circuit in *Kitchens*. In that case, the court held that there is a right to the assistance of counsel in federal court on a Rule 33 motion for new trial. *Kitchens*, 227 F.3d at 1019.

[8] *Teague v. Lane* bars the application of a new constitutional rule of law by a federal court to grant habeas relief. *See* 489 U.S. 288, 310 (1989). Here, we deny habeas relief, but we note that we have not applied a new rule, but an old rule—the right to the assistance of counsel at critical stages of a proceeding—to new facts. *See Hamilton*, 368 U.S. at 53; *see also Bell v. Hill*, 190 F.3d 1089, 1092-93 (9th Cir. 1999) (holding that, because the court in *Menefield* relied "exclusively on Supreme Court precedent addressing the Sixth Amendment right to counsel," in finding that "the right to counsel attaches to the motion for a new trial stage," it is not a new rule under *Teague*); *Burdine v. Johnson*, 262 F.3d 336, 353-54 (5th Cir. 2001) (en banc) (Higginbotham, J., concurring) ("Since *Hamilton*, the Supreme Court has applied the same rule to different facts. In each case, the Court did not reformulate the rule, but applied the pre-existing rule to a different set of facts."). A rule is new only if it "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301. Here, the Supreme Court had long established standards for this court to use in determining whether a stage is critical, and simply applying those standards to the facts of this case does not amount to an application of a "new rule." *See Williams,* 529 U.S. at 382 (Stevens, J., concurring) ("[A]s our precedent interpreting *Teague* has demonstrated, rules of law may be sufficiently clear for habeas purposes even when they are expressed in terms of a generalized standard rather than a bright-line rule.").

No. 08-41230

The Texas Court of Criminal Appeals (CCA) has held that it is—"as a matter of federal constitutional law, that the time for filing a motion for new trial is a critical stage of the proceedings, and that a defendant has a constitutional right to counsel during that period." *Cooks v. State*, 240 S.W.3d 906, 911 (Tex. Crim. App. 2007); *see also Trevino v. State*, 565 S.W.2d 938, 940 (Tex. Crim. App. 1978) (holding that defendant has a right to the assistance of counsel at a hearing on the motion for new trial). The CCA in *Cooks* noted that a "motion for new trial is a necessary step to adduce facts not otherwise in the record, in order to be able to present these points of error based on those facts in the appeal." *See* 240 S.W.3d at 910 (citing Tex. R. App. P. 21.2). This rings particularly true in the context of an ineffective-assistance claim. *See* Tex. R. App. P. 21.2; *see also Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.") (citation omitted); *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("A proper record is best developed in a habeas corpus proceeding or in a motion for new trial hearing."). Thus, if a defendant fails to make a motion for new trial on an ineffective-assistance claim, there will be no record available on direct appeal for the appellate court to review. And although a defendant is not precluded from pursuing an ineffective-assistance claim on habeas, not only will the defendant have spent time in prison awaiting the opportunity to press the claim, he or she will have to do without the assistance of counsel in pursuing it.

In addition to the CCA, every Texas court of appeals to consider the issue has also concluded that, in Texas, a motion for new trial, during the post-trial, pre-appeal period, is a critical stage. *See, e.g.*, *Prudhomme v. State*, 28 S.W.3d 114, 119 (Tex.App.—Texarkana 2000, no pet.); *Massingill v. State*, 8 S.W.3d 733, 736 (Tex.App.—Austin 1999, no pet.); *Hanson v. State*, 11 S.W.3d 285, 288

No. 08-41230

(Tex.App.—Houston [14th Dist.] 1999, pet. ref'd); *Burnett v. State*, 959 S.W.2d 652, 656 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd).  For example, the court of appeals in *Prudhomme* thoroughly explained how, under Texas law, the motion for new trial, during the post-trial, pre-appeal period, affected the substantial rights of the accused:

> We find it to be indisputable that counsel can be useful in coping with legal problems in preparing, filing, presenting, and obtaining a hearing on a proper motion for new trial, because the process of preserving error with a motion for new trial is governed by a myriad of rules and can be a rather arduous task.  We also find it to be beyond dispute that a motion for new trial can be an extremely important tool for presenting an appeal. A motion for new trial is generally not a prerequisite to an appeal, but it can be indispensable for a meaningful appeal of issues which are reliant on facts outside the record.

*Prudhomme*, 28 S.W.3d at 118 (citations omitted).

As noted above, every federal circuit to consider this issue, as well as the Texas Court of Criminal Appeals, has relied on settled Supreme Court precedent in determining that the motion for new trial, during the post-trial, pre-appeal period, is a critical stage.  We join these circuits, and the Texas Court of Criminal Appeals, in holding that there is a Sixth Amendment right to the assistance of counsel at the motion for new trial, during the post-trial, pre-appeal period, in Texas, because it is a critical stage.

## III

We now turn to the issue of whether (1) McAfee was denied the effective assistance of counsel at the motion-for-new-trial stage, and (2) whether the state court denied him a fair hearing because it failed to grant his motion to dismiss court-appointed counsel prior to the hearing on the motion for new trial.

Under AEDPA, this court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United

No. 08-41230

States," or "was based on an unreasonable determination of the facts" in light of the state court record. 28 U.S.C. § 2254(d). Clearly established federal law comprises "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. Thus, under AEDPA's standard of review, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

We analyze McAfee's ineffective-assistance claim under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Thompson*, 9 S.W.3d at 812 ("Texas courts adhere, as we must, to the United States Supreme Court's two-pronged *Strickland* test to determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel."). Under *Strickland*, the defendant must first show that counsel's performance was deficient—that his assistance fell below an objective standard of reasonableness. *Ogan v. Cockrell*, 297 F.3d 349, 360 (5th Cir. 2002). Judicial scrutiny of counsel's performance must be "highly deferential," indulging in a "strong presumption" that "trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy." *West v. Johnson*, 92 F.3d 1385, 1400, 1409 (5th Cir. 1996) (quoting *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992)). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson*, 950 F.2d at 1065. Mere "error by counsel, even if professionally unreasonable, does not warrant setting aside the

No. 08-41230

judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Second, the defendant must show prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Confidence in the outcome of the trial is undermined when counsel's deficient performance renders "the result of the trial unreliable or the proceeding fundamentally unfair." *Pratt v. Cain*, 142 F.3d 226, 232 (5th Cir. 1998) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* (quoting *Lockhart*, 506 U.S. at 372). The failure to prove either deficient performance or actual prejudice is fatal to an ineffective-assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

Because McAfee's ineffective-assistance claim was previously considered and rejected on state habeas corpus review, the state court's decision on the claim will be overturned only if it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Here, McAfee asserted that he was entitled to a new trial because his counsel had rendered ineffective assistance at trial. McAfee listed a number of reasons why his counsel, Donahue, was ineffective, including the failure to call witnesses. Instead of acting as his counsel, or at least allowing McAfee to testify at the hearing on the motion for new trial, Donahue acted adversely to his client. The potential conflict of interest cited in McAfee's motion to dismiss Donahue became an actual one, as Donahue interrupted McAfee numerous times during his testimony, accused McAfee of lying and referred to their trial strategy as

troubled. At the outset, Donahue was hostile toward McAfee, stating, "I have been around and I know how this works and I am the target." While Donahue defended his decision not to call certain witnesses, McAfee objected to his own counsel's testimony, noting that it was hearsay, an objection the state district court sustained. Even after being admonished several times by the trial court, "Wait a minute, Mr. Donahue. If you say anything in conflict with your client's defense . . . . You are still his attorney. Anything you say doesn't help his case," Donahue still referred to McAfee's assertions about his ineffective assistance as "nonsense. That's a complete lie." As the hearing progressed, Donahue continued to interrupt McAfee's testimony, consistently arguing with his own client, "That's not correct. That's not true." When it finally came time for him to speak, Donahue accused McAfee of lying, "I am still his attorney. When he tells you he gave me a closing statement to read, it's a bold faced lie."

At one point, Donahue began revealing privileged information, to which McAfee objected, and the court sustained. About halfway through the hearing, McAfee cross-examined the state's witness, and Donahue took it upon himself to do the re-direct, impugning the merits of his own client's motion. Given Donahue's several statements referring to the motion for new trial as "Mr. McAfee's motion," or "your motion," it is not surprising that Donahue felt no need to assist his client. But Donahue did more than fail to assist; he interrupted, accused, undermined the merits of the motion, and acted adversely to McAfee. Indeed, Donahue completely abrogated his duties as McAfee's counsel. Donahue did not even draft the substantive portions of the motion; McAfee did. The only action undertaken by Donahue as assistance at the motion-for-new-trial stage was the filing of the motion itself. Donahue labored under an actual conflict of interest at the hearing on the motion for new trial, and his performance as an attorney fell below an objective standard of reasonableness. We hold that Donahue's conduct was deficient. To the extent that the state court's finding of

No. 08-41230

reasonably effective assistance of counsel was premised on a determination that Donahue's conduct was not deficient, the state court unreasonably applied *Strickland*'s performance prong.

Finding that counsel was deficient, we must also find actual prejudice in order to sustain McAfee's ineffective-assistance claim. *See Green*, 160 F.3d at 1035. The standard is whether there is a reasonable probability that, but for Donahue's professional errors, the state trial court would have granted McAfee a new trial. McAfee filed the motion for new trial based primarily on the ineffective assistance of counsel at trial. In Texas, to prevail on such a motion, McAfee would have to show that his counsel was ineffective at trial under *Strickland*. *See, e.g., Murray v. State*, —S.W.3d—, 2010 WL 4924913 (Tex. App.—Dallas 2010, no pet.).

At the hearing, McAfee contended that Donahue was ineffective, among other reasons, for failing to call witnesses.[9] McAfee claimed to have "affidavits from people [Donahue] told not to show up in court," and referred to allegations that Donahue discouraged witnesses from testifying by showing them video of the robbery and asking them, "Isn't that Charles." Although no affidavits were attached to the motion for new trial, two affidavits, dated after the hearing, were attached to McAfee's state habeas petition. McAfee contends that these affidavits, from two alleged alibi witnesses, Jones and Ruiz, would have affected the outcome of the trial.

As discussed above, Jones attested that he was with McAfee at Duster's Saloon celebrating Carmichael's birthday party the night of June 7, 2002 and in

---

[9] McAfee's other reasons for ineffective assistance, including failure to communicate information regarding the amended indictment, were addressed by the district court. As to these other reasons, we agree with the district court that McAfee has not demonstrated that "the state habeas courts' findings were an unreasonable application of clearly established federal law." *See McAfee*, 2008 WL 415225, at *12.

No. 08-41230

the early hours of June 8, 2002. Jones's affidavit corroborates Carmichael's testimony at trial that McAfee was with them from around midnight till when the bar closed, which was around 2:15 A.M., according to Carmichael. Jones stated that he saw McAfee drive towards Carmichael's home, but did not see McAfee at Carmichael's.

Ruiz attested that she was with McAfee the night of June 7, 2002 until midnight, and while he invited her to come to Carmichael's birthday party, she declined. She also stated that she was with McAfee that weekend, from 6:30 on Saturday, June 8, 2002, to 9:30 A.M. on Sunday morning, June 9, 2002. The affidavit does not indicate whether it was 6:30 A.M. or P.M. However, Ruiz stated that she did not go to the party because she had to work the next day, and Donahue stated in an affidavit that neither McAfee nor Ruiz told him that they were together at 6:30 A.M. on Saturday morning.

Both witnesses lend credibility to McAfee's narrative, that he was with friends till about 2:45 A.M. on Saturday, June 8, 2002, and that he went to sleep and then awoke to have coffee with Carmichael around 8:00 or 9:00 A.M. But neither witness's affidavit provides McAfee with an alibi as to his whereabouts at 5:20 A.M. on Saturday, June 8, 2002.

In light of the fact that the state only presented the testimony of one eyewitness, this is arguably a close case on prejudice. However, under AEDPA, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, —U.S.—, 129 S.Ct. 1411, 1420 (2009). Thus, under AEDPA's standard of review, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. Here, the state court found that McAfee "has failed to show if

18

counsel had acted as he now asserts they should have, such as addressing the indictment issue or having Mr. Jones and Ms. Ruiz testify for Applicant, the outcome of this case would have likely been different." Based on the facts, we cannot say that the state court unreasonably applied *Strickland*'s prejudice prong by finding that McAfee failed to establish an ineffective-assistance claim.

IV

In addition to his ineffective-assistance claim, this court granted McAfee a COA on the issue of whether the state district court denied McAfee a fair hearing by failing to grant his motion to dismiss trial counsel until after the hearing on the motion for new trial. "Unless some other constitutional right incorporated into the fourteenth amendment by the due process clause is abridged, due process is violated only if the court's action denies a defendant a fundamentally fair trial." *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278 (5th Cir. 1985) (per curiam) (citation omitted). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (citation omitted).

The inquiry here would be whether there is a reasonable probability that, but for the state district court's failure to dismiss court-appointed counsel, McAfee would have been granted a new trial. The analysis is the same as the prejudice prong of *Strickland*, and as discussed above, we find, under AEDPA deference, that there is no prejudice.

For the foregoing reasons, we affirm.

AFFIRMED.