# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 25, 2013

No. 11-50420

Lyle W. Cayce
Clerk

RODOLFO CIPRIANO GOMEZ,

Petitioner-Appellant,

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

Appeal from the United States District Court for
the Western District of Texas
USDC No. 5:10-CV-344

Before STEWART, Chief Judge, and GARZA and ELROD, Circuit Judges.

PER CURIAM[*]:

Petitioner-Appellant Rodolfo Cipriano Gomez ("Gomez") appeals the district court's denial of his habeas petition under 28 U.S.C. § 2254. This court granted a certificate of appealability ("COA") under 28 U.S.C. § 2253(c)(2) on the issue of whether the state court's denial of Gomez's claim that he was denied counsel during a critical stage of his criminal proceeding was an unreasonable application of *United States v. Cronic*, 466 U.S. 648 (1984). We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-50420

## I.  FACTS

During pretrial proceedings, Gomez filed a motion to suppress the search warrant that led to his arrest.  Gomez argued that the affiant for the warrant was untruthful in stating that there was a confidential informant ("CI") who had made controlled purchases of heroin at Gomez's residence.  Gomez further argued that, even if there was a CI, the affiant did not establish that the CI was reliable and trustworthy or that the CI previously had worked for the police.

Gomez and his siblings were represented by separate attorneys at a joint suppression hearing on February 6, 2003.  During the hearing, the following witnesses testified: Detective Juan Guerrero, the affiant for the search warrant; Judge Brenda Chapman, the judge who issued the warrant; and Officer Enrique Sanchez, an investigator who worked on Gomez's case.  Detective Guerrero testified that, according to an incident report, the CI bought heroin from Gomez.

After closing statements, the trial court advised the parties that they should return to court on February 10th, with written briefs addressing certain issues raised during the hearing and that they would have "an opportunity to talk" before the court ruled on the motion.  Gomez's counsel, Glen Peterson, advised the trial court that he would be out of town on February 10th but that he could have his brief delivered to the other defense counsel who would be present at the hearing.  The trial court advised Peterson that his presence was not required because it was not "[Gomez's] case [they] will be trying" and other counsel could "adequately carry the ball on argument."  Peterson advised the trial court that he might have substitute counsel present on February 10th "just to be safe."

On February 10th, the trial court stated that it was continuing the *Franks* hearing.[1]  Peterson was absent from the hearing;  however, counsel for Gomez's

---

[1] *See Franks v. Delaware*, 438 U.S. 154, 171 (1978) (holding that a defendant can challenge an affidavit supporting a search warrant if the defendant shows allegations that were deliberately false or made with a reckless disregard for the truth and that such

sister, and Gomez's brother–Arnaldo Gomez ("Arnaldo") were present. The trial court noted that it was unsure how to address Peterson's absence but would "deal with that when that [came] up." At this hearing, Officer Adam Pastrano, a criminal investigator who was involved with the case, testified that on December 12, 2001, he witnessed the CI make contact with Arnaldo, at the residence. Officer Pastrano acknowledged that, although he did not personally witness a transfer of heroin, the CI later informed him that he purchased heroin from Arnaldo. Officer Pastrano acknowledged in his testimony, however, that a written report by Detective Guerrero had identified Gomez as the person who sold heroin to the CI during that controlled buy, not Arnaldo. Nevertheless, the motion to suppress was overruled.

On February 13th, another hearing was held on Gomez's motion to suppress. Again, Peterson was not present, but counsel for Arnaldo was present when testimony from the CI was taken. The CI testified that he was searched prior to making the controlled buys of heroin from the defendants and that he recalled making one of the purchases from Arnaldo. He denied telling counsel the day before the continued hearing that he did not purchase anything from Arnaldo and Gomez. The trial court reaffirmed its denial of the motion to suppress.

Following a jury trial in 2005, Gomez was convicted of engaging in organized criminal activity. After finding that Gomez had used firearms to facilitate the activity, the trial judge sentenced him to 60 years in prison. The Court of Appeals for the Third District of Texas affirmed his conviction. The Texas Court of Criminal Appeals denied his petition for discretionary review.

In his state habeas petition Gomez argued, *inter alia*, that he was denied counsel during a "critical stage" of his criminal proceeding. *Cronic,* 466 U.S. at 658-62. Specifically, Gomez claimed that the trial court abused its discretion in

---

statements were necessary in supporting the probable cause determination).

3

No. 11-50420

holding two continued hearings on his motion to suppress when he had no counsel present. The Texas Department of Criminal Justice (the "Department") did not answer the petition and the state trial court did not make any recommendations regarding the petition. The Texas Court of Criminal Appeals denied the petition without a written order on February 10, 2010. After exhausting his state remedies, Gomez filed a federal habeas petition under 28 U.S.C. § 2254.

The magistrate judge recommended denying Gomez's § 2254 petition. The magistrate judge acknowledged that Gomez was arguing that he was denied counsel in violation of *Cronic* because his counsel was absent at what he alleged was a "critical stage" of his proceeding. *Cronic*, 466 U.S. at 658-62. The State argued that Gomez's counsel was "merely absent from a small portion of the proceedings at which his presence was not necessary," and that *Cronic* was inapplicable. *Id.* Adopting the State's argument, the magistrate judge concluded that, because Gomez's conclusory arguments failed to demonstrate ineffectiveness or prejudice, as required by *Strickland v. Washington*, 466 U.S. 668 (1984), Gomez had not shown that the state court's denial of his claim constituted either an unreasonable determination of the facts or an unreasonable application of federal law as determined by the Supreme Court. The district court adopted the magistrate's recommendation and denied Gomez's § 2254 petition and motion for COA.

In the instant § 2254 petition, Gomez argues, *inter alia*, that he was denied counsel in violation of *Cronic* and that the trial court abused its discretion by taking evidence against him and by denying his suppression motion without first asking whether he wished to waive his right to counsel. Because the district court's resolution of Gomez's *Cronic* claim was debatable, this court granted a COA in part with respect to that claim. *See Gomez v. Thaler*, No. 11-50420 (5th Cir. filed Nov. 8, 2011) (order granting COA).

## II. Standard of Review

In an appeal from the denial of habeas relief, this court reviews the district court's conclusions de novo and its findings of fact for clear error. *Austin v. Cain*, 660 F.3d 880, 884 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 1914 (2012). Our inquiry in this case is limited to the highly deferential review standard afforded to state court adjudications under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. *See Hearn v. Thaler*, 669 F.3d 265, 271 (5th Cir. 2012) ("AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks and citation omitted)). Under AEDPA, a federal court may not grant habeas relief on a claim that was adjudicated on the merits by a state court unless the state court decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254 (d)(1). "Clearly established Federal law" refers to holdings of the Supreme Court at the time of the state court's decision. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). Factual findings by the state court "are presumed to be correct, and a petitioner has the burden of rebutting this presumption with clear and convincing evidence." *Brown v. Dretke*, 419 F.3d 365, 371 (5th Cir. 2005) (citing 28 U.S.C. § 2254(e)(1)).

A state court decision involves an unreasonable application of federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Fields v. Thaler*, 588 F.3d 270, 273 (5th Cir. 2009) (quoting *Williams*, 529 U.S. at 407-08). In evaluating whether a state court's application of a rule was unreasonable, the specificity of the rule must be considered. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-

case determinations." *Id.* An unreasonable application of law differs from an incorrect application; thus, a federal habeas court may correct what it finds to be an incorrect application of law only if this application is also objectively unreasonable. *See Williams*, 529 U.S. at 409-11. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citation omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* The Supreme Court has noted that "this standard is difficult to meet . . . because it was meant to be." *Id.*

### III. DISCUSSION

On appeal, Gomez argues that his counsel's absence from the continued hearings on his motion to suppress constituted a denial of counsel during a "critical stage" of his criminal proceedings as contemplated by *Cronic*, because a suppression hearing is outcome-determinative in a criminal proceeding. *See Cronic*, 466 U.S. at 658-62. Gomez submits that the continued hearings related to his motion to suppress constituted a "critical stage" of his proceedings because evidence obtained pursuant to the search warrant implicated him in the drug conspiracy. Consequently, Gomez asserts that his counsel's absence was a "procedural structural defect" in the proceedings warranting reversal of his conviction.

The Department argues that even if AEDPA standards are inapplicable, Gomez was not denied counsel during the continued hearings on his motion to suppress because: (1) his counsel's absence was voluntary and not caused by the trial court; (2) there were other attorneys present to represent Gomez's interests; (3) the nature of the testimony introduced at the hearings was cumulative to testimony offered during the initial hearing when counsel was present; (4) any prejudice was cured by counsel's filing of a written brief in support of the motion

to suppress and by trial counsel's lodging of objections during the trial; and (5) the motion to suppress was without merit. Additionally, the Department concludes that the alleged denial of counsel was not "of such significance that it [made] the adversary process itself unreliable" because Gomez was not completely denied counsel and the supplemental hearings on the motion to suppress were not a critical stage of the trial. *See United States v. Russell*, 205 F.3d 768, 771 (5th Cir. 2000). In the alternative, the Department argues that, if there was a denial of counsel, the violation was harmless error. *See Satterwhite v. Texas*, 486 U.S. 249, 257 (1988).

The Department also emphasizes that the requirements of *Cronic* are general and that, under AEDPA, this court should not conclude that the state court's ruling was an unreasonable application of federal law. The Department further argues that, because this court would have to fashion a "new rule" under *Cronic* to grant relief in this case, any relief contemplated by this court would be barred by *Teague v. Lane*, 489 U.S. 288, 301 (1989). In his reply brief, Gomez responds that the harmless error standard of review does not apply to his *Cronic* claim.

In *Cronic*, the Supreme Court recognized that a defendant might be denied counsel even though an attorney had been appointed to represent him if, *inter alia*, the defendant was denied counsel at a "critical stage" of his criminal proceedings. *Cronic*, 466 U.S. at 658-62. "*Cronic* instructed that a presumption of prejudice would be in order in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Florida v. Nixon*, 543 U.S. 175, 190 (2004) (internal citation omitted). Thus, *Cronic* "recognized a narrow exception to *Strickland's* holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense." *Id.*

No. 11-50420

The case *sub judice* presents the sole question of whether the state court's denial of Gomez's habeas claim that he was denied counsel during a "critical stage" of his criminal proceeding was an unreasonable application of *Cronic*. Our consideration of this issue requires us to review the Supreme Court's holdings to determine what is deemed to be a "critical stage" of a criminal proceeding under "clearly established federal law."[2] *See Williams*, 529 U.S. at 412 (stating "clearly established Federal law" refers to holdings of the Supreme Court at the time of the state court's decision).

In evaluating Gomez's petition, we conclude that no Supreme Court precedent has directly addressed the issue of whether the denial of counsel at a hearing on a motion to suppress is a "complete denial of counsel" at a "critical stage" of a criminal proceeding for the purposes of the Sixth Amendment. Because no decision of the Supreme Court has addressed the issue presented before us, "it cannot be said that the state court '[unreasonably applied] clearly established Federal law.'"[3] *Wright v. Van Patten*, 552 U.S. 120, 126 (2008)

---

[2] In prior decisions, the Supreme Court has specifically enumerated a "critical stage" of a criminal proceeding for Sixth Amendment purposes. Among the stages of a criminal proceeding that the Court has deemed to be a "critical stage" are arraignments, *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961); post-indictment interrogations, *Massiah v. United States*, 377 U.S. 201, 205-06 (1964); post-indictment identification lineups, *United States v. Wade*, 388 U.S. 218, 236-37 (1967); entry of a guilty plea, whether to a misdemeanor or a felony, *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972); closing summation, *Herring v. New York*, 422 U.S. 853, 858 (1975); overnight recess between direct and cross-examination of a defendant, *Geders v. United States*, 425 U.S. 80, 91 (1976); and court-ordered psychiatric examinations to determine competency to stand trial and future dangerousness, *Estelle v. Smith*, 451 U.S. 454, 470 (1981).

[3] In a direct appeal context, Gomez would have a compelling argument that a suppression hearing is a "critical stage" of a criminal proceeding under *Cronic*. However, because he presents this issue in a habeas context, AEDPA's limited standard of review constrains us to the question of whether the state court's ruling was an "*unreasonable application of* [] clearly established Federal law as determined by the *Supreme Court*." 28 U.S.C. § 2254 (d)(1) (emphasis added). While some of our sister circuits provide persuasive authority that a pretrial suppression hearing is a "critical stage" of the proceedings, those decisions either predated AEDPA's April 24, 1996 enactment date or addressed the question on direct appeal. *See* 28 U.S.C. § 2254 (stating the effective date of AEDPA is April 24,

No. 11-50420

(alterations in original) (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)). Moreover, because we find that the state court did not unreasonably apply clearly established federal law, we need not consider the Department's remaining arguments on appeal.

### IV.  CONCLUSION

Finding no error, we AFFIRM the district court's denial of Gomez's habeas petition.

---

1996); *United States ex rel. Thomas v. O'Leary*, 856 F.2d 1011, 1016-17 (7th Cir. 1988) (determining that counsel's failure to file a responsive brief in the State's appeal from the grant of a pretrial motion to suppress constituted absence of counsel during a "critical stage"); *Henderson v. Frank*, 155 F.3d 159, 163, 166 (3d Cir. 1998) (noting that pre-AEDPA habeas statute applied because habeas petition was filed before AEDPA's effective date and stating that a suppression hearing is a "critical stage"); *United States v. Hamilton*, 391 F.3d 1066, 1070 (9th Cir. 2004) (deciding on direct appeal that a pretrial motion to suppress evidence constitutes a "critical stage" of the proceeding).  As the Supreme Court has not expressly held that a suppression hearing is a "critical stage" of a criminal proceeding, however, this fact ends our inquiry with respect to Gomez's petition.  *See Marshall v. Rodgers*, 133 S. Ct. 1446, 1451 (2013) (per curiam) ("[Circuit courts] may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct.").