# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20570

United States Court of Appeals
Fifth Circuit

**FILED**

November 22, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

　　　　Plaintiff–Appellee,

v.

FRANCIS YUVINI GUERRA PLEITEZ, also known as Colochin, also known as Flaco,

　　　　Defendant–Appellant.

Appeals from the United States District Court
for the Southern District of Texas

Before DAVIS, CLEMENT, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

This Court is asked to determine whether the entry of a final restitution order or an amended judgment that imposes a more onerous restitution award under 18 U.S.C. § 3664(d)(5) constitutes a "critical stage" of trial proceedings requiring access to counsel. Defendant–Appellant Francis Yuvini Guerra Pleitez ("Pleitez") entered into a plea agreement for a crime mandating restitution and waived his right to appeal all claims other than claims of ineffective assistance of counsel. At sentencing, the district court issued a partial restitution order but deferred its final determination of restitution pending further investigation by the probation officer.

No. 16-20570

After Pleitez's trial counsel was dismissed, but before his appellate counsel was appointed, the probation officer submitted a Fourth Addendum to Pleitez's presentence report ("PSR") recommending a more onerous restitution award based on a new method of calculation. The district court amended the restitution order to reflect the updated findings in the Fourth Addendum. Subsequently, the court entered an amended judgment on the same day Pleitez's appellate counsel was appointed. On appeal, Pleitez argues that he was unconstitutionally deprived of the effective assistance of counsel during a critical stage of trial proceedings. Because we find that the acceptance of an addendum to a PSR recommending a more onerous restitution award constitutes a critical stage, we VACATE and REMAND.

## I. BACKGROUND

On August 7, 2015, Pleitez pleaded guilty to conspiracy to engage in sex trafficking of children by force, fraud, or coercion. He agreed as part of his plea agreement to waive the right to appeal his conviction and sentence but reserved the right to raise claims of ineffective assistance of counsel. He also agreed to pay restitution to the victims in an amount to be determined by the district court and, subject to the appeal waiver provision, waived the right to challenge the restitution order on any ground.

In order to assist the trial court in determining the restitution amount, 18 U.S.C. § 3664 requires the probation officer to complete a PSR that contains sufficient information for the court to order restitution, including "a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant." 18 U.S.C. § 3664(a); *see also* Fed. R. Crim. P. 32(c)(1)(B). The original PSR, prepared on May 13, 2016, included victim interviews and specified types of victim losses that could be ordered as restitution but reported that no response had been received from the victims. Pleitez filed objections to

2

No. 16-20570

the PSR on June 8, 2016, arguing that various sentencing enhancements should not apply. The First Addendum to the PSR, filed on June 24, 2016, addressed Pleitez's objections, and noted that mandatory restitution applied. The Second Addendum to the PSR was filed on the day of the sentencing hearing, August 17, 2016, and reflects three of the victims' claims for restitution: victim L.T.S. claiming $71,240,[1] victim I.H. claiming $18,380, and victim M.G.C. claiming $490, for a total of $90,110 in restitution.

At the sentencing hearing, Pleitez did not object to M.G.C.'s claim for $490 or to the restitution owed to victims for future counseling expenses.[2] He did, however, challenge the claims by L.T.S. and I.H. to the extent they were based on "lost wages;"[3] according to Pleitez, the victims were not entitled to restitution for lost wages because they worked illegal jobs and were not legally present in the United States. The probation officer maintained that victims could receive either the value of prostitution services rendered or the wages they would have earned for their services. The court acknowledged defense counsel's position, reviewed his filings, and understood defense counsel's objection to paying $71,240 to L.T.S. and $18,380 to I.H. to the extent these figures were based on lost wages. But the court refrained from ruling, stating that it would first "take the probation department's research" into account. The court sentenced Pleitez to 210 months' imprisonment, five years' supervised release, and ordered $490 in restitution for M.G.C.'s claim. Regarding the $71,240 for L.T.S. and $18,380 to I.H., the court stated it would withhold its decision based on its "statutory or case interpretation" with the assistance of

---

[1] There is some confusion as to whether L.T.S. claimed $71,120 or $71,240. The Second Addendum valued her loss at $71,120, but L.T.S. actually reported a loss of $71,240. Because the district court based its decision on the latter amount, we use $71,240 throughout.

[2] L.T.S. claimed $26,000 in counseling or therapy costs; I.H. claimed $3,300 in counseling or therapy costs.

[3] L.T.S. claimed $45,240 in lost wages; I.H. claimed $15,080 in lost wages.

3

No. 16-20570

the parties and the probation office. The court said it would consider anything in writing defense counsel submitted after the sentencing hearing, but added that the defense counsel was not obligated to submit anything further.

On August 24, 2016, the probation officer filed the Third Addendum to the PSR after sentencing. The Third Addendum reported that it was appropriate to award restitution to illegal aliens, and trafficking victims are entitled to "the *greater of* the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." The probation officer estimated that the value of the victims' services likely exceeded $120,000 but, because it was speculative, recommended that the court use the lower lost-wage amounts previously requested by the victims. Pleitez again filed objections on August 25, 2016, challenging the inclusion of lost wages and arguing that the proposed amount was speculative, ambiguous, and impermissibly based on victim impact statements. And he filed a notice of appeal the following day. On August 30, 2016, the district court permitted Pleitez's trial counsel to withdraw.

On September 6, 2016, while Pleitez was not represented by counsel, the probation officer filed the Fourth Addendum responding to Pleitez's objections. But the Fourth Addendum went further. The lost wages claimed by L.T.S. and I.H. at sentencing were based on a computation of minimum wage under the Fair Labor Standards Act ("FLSA"), but the Fourth Addendum based its recommendation of restitution owed for lost wages on a new method of calculation: estimating wages the victims actually earned for their services by relying on the victims' statements regarding the number of hours worked, the amount charged for each sex act, and the number of customers. As a result, the Addendum concluded that an "extremely conservative" calculation estimated that L.T.S. generated $50,400 in gross income and I.H. generated $33,600 in

No. 16-20570

gross income. Because these amounts were higher than the FLSA estimates proposed at sentencing, the Addendum recommended an increased mandatory restitution award of $76,400 for L.T.S. and $36,900 for I.H.[4] The same day, the district court entered an order for restitution in the amount of $76,400 to L.T.S. and $36,900 to I.H., reflecting the Fourth Addendum's recommendation. The district court also signed an amended judgment ordering Pleitez to pay restitution of $490 to M.G.C., $76,400 to L.T.S., and $36,900 to I.H., for a total of $113,790 in restitution.

After spending nine days without counsel, appellate counsel was appointed for Pleitez on September 9, 2016. That same day, the district court entered an Amended Final Judgment reflecting a final restitution award of $113,790. Pleitez then timely filed a supplemental notice of appeal.

## II. DISCUSSION

Pleitez appeals the judgment of conviction and sentence of imprisonment entered on September 9, 2016. This Court has jurisdiction over the district court's final judgment pursuant to 28 U.S.C. § 1291. Pleitez's appeal presents two issues: (1) whether Pleitez's appeal is barred by the appeal waiver in his plea agreement; and (2) whether the district court violated Pleitez's Sixth Amendment right to counsel by amending the judgment and issuing a new restitution order during the nine-day period where Pleitez was not represented by either trial or appellate counsel.

### A.    The Appeal Waiver

The Government argues that Pleitez's appeal is barred by the appeal waiver provision of his plea agreement. "This court reviews de novo whether an appeal waiver bars an appeal." *United States v. Keele*, 755 F.3d 752, 754

---

[4] These amounts combined the lost wages estimate with counseling and therapy costs that the Defendant did not dispute. *See supra* note 2.

(5th Cir. 2014). In order to determine whether an appeal waiver applies to the issues presented, this Court "ascertain[s] the ordinary meaning of the waiver provision." *United States v. Jacobs*, 635 F.3d 778, 781 (5th Cir. 2011). The Fifth Circuit "construe[s] appeal waivers narrowly, and against the government." *United States v. Palmer*, 456 F.3d 484, 488 (5th Cir. 2006). Because we find that Pleitez's appeal falls within the waiver provision's exception for ineffective assistance of counsel claims, we may hear this case.

A criminal defendant may waive his statutory right to appeal in a valid plea agreement. *See United States v. Story*, 439 F.3d 226, 231 (5th Cir. 2006) (holding appellate waivers are enforceable if invoked by the United States). "An appeal waiver bars an appeal if the waiver (1) was knowing and voluntary and (2) applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Higgins*, 739 F.3d 733, 736 (5th Cir. 2014). "A defendant must know that he had a right to appeal his sentence and that he was giving up that right." *United States v. Portillo*, 18 F.3d 290, 292 (5th Cir. 1994) (internal quotation marks and citation omitted).

Both parties agree that the appeal waiver contained in Pleitez's plea agreement was knowing and voluntary. But Pleitez and the Government disagree as to the scope of the waiver. The text of the appeal waiver is found in paragraph 7 of the plea agreement: Pleitez waived "the right to appeal or 'collaterally attack' the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal . . . or on collateral review." Pleitez also agreed in paragraph 21 of the plea agreement to "pay full restitution to the victim(s) regardless of the count(s) of conviction" as determined by the court. Additionally, subject to the provisions of paragraph 7, Pleitez waived "the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court."

Pleitez contends that his claim falls within the appeal waiver's exception for claims of ineffective assistance of counsel. He does not contest that he is prevented from appealing the restitution order itself. *See Keele*, 755 F.3d at 756 (finding that an appeal waiver barred defendant's right to appeal the restitution order where the agreement explicitly referenced restitution). He emphasizes that the restitution amount was vigorously contested, and the final restitution order and the Fourth Addendum on which it was based were entered after trial counsel withdrew but before appellate counsel was appointed. Additionally, because the final restitution order increased his penalty to be "more onerous," Pleitez argues he was not just denied assistance of counsel, but "he did not have a lawyer at a critical stage." By contrast, the Government argues that because "there was no violation of Pleitez's trial rights," the waiver should be enforced and the direct appeal dismissed.

The denial of counsel is properly characterized as an ineffective assistance of counsel claim. *See United States v. Cronic*, 466 U.S. 648, 654 (1984) ("[I]t has long been recognized that the right to counsel is the right to the effective assistance of counsel.") (internal quotation marks and citation omitted). To the extent that Pleitez contends that the absence of counsel during a critical stage deprived him of his Sixth Amendment right to counsel, the claim falls within the appeal waiver exception. *See United States v. Hillsman*, 480 F.3d 333, 335 (5th Cir. 2007) ("[T]he accused is entitled to the assistance of counsel not only at the trial itself, but at all 'critical stages' of his prosecution."). Thus, we may review his denial of counsel claim.

**B.    Sixth Amendment Claim**

Pleitez argues that amending the judgment and increasing the restitution award during a gap in representation between trial and appellate counsel violated his Sixth Amendment right to counsel. "This Court reviews constitutional challenges and questions of law de novo." *United States v.*

*Robles*, 445 F. App'x 771, 776 (5th Cir. 2011) (citing *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002); *United States v. Walker*, 148 F.3d 518, 528 (5th Cir. 1998)). Whether a defendant's right to counsel was constructively denied "is a mixed question of law and fact, subject to *de novo* review." *Childress v. Johnson*, 103 F.3d 1221, 1224 (5th Cir. 1997). In support of his argument, Pleitez observes that the sentencing and assessment of a criminal penalty is a critical stage, and restitution imposed pursuant to § 3664 is a criminal penalty. And he contends that he had a right to be present for new sentencing or sentence modifications that made the original sentence "more onerous." Here, the modified restitution amount was more onerous, and Pleitez needed counsel to raise objections to the Fourth Addendum. Thus, he asserts that the consideration and acceptance of the Fourth Addendum constituted a critical stage of trial proceedings during which he was denied access to an attorney. We agree.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right is not limited to the trial itself; an accused is entitled to assistance of counsel at all "critical stages" of criminal proceedings. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009); *Hillsman*, 480 F.3d at 335. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland v. Washington*, 466 U.S. 668, 691–92 (1984). Thus, an accused is entitled to assistance of an attorney who plays the adversarial role necessary to ensure that the proceeding itself is fair. *Id.* at 685. Ordinarily, an ineffective assistance of counsel claim requires a two-prong showing that "representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Id.* at 688, 694. However, "a trial is unfair if the accused is denied counsel at a critical stage of his trial," and no showing of prejudice is required. *Cronic*, 466 U.S. at 659. If counsel for the accused is absent during a critical stage, then there is a presumption of prejudice and "reversal is automatic." *Hillsman*, 480 F.3d at 335 (quoting *Holloway v. Arkansas*, 435 U.S. 475, 489 (1978); *Cronic*, 466 U.S. at 659 n.25).

Neither the Supreme Court nor the Fifth Circuit have delineated all of the critical stages at which a defendant is entitled to the presence of counsel under the Sixth Amendment. A stage is determined "critical" where circumstances indicate that counsel's presence is necessary to ensure a fair process. *See Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 212 (2008) ("[W]hat makes a stage critical is what shows the need for counsel's presence."). First, the Supreme Court and this Circuit have found critical stages where an accused is confronting his adversary, requiring the assistance of counsel to ensure a fair adversarial process.[5] A critical stage in the proceeding is thus one where "the accused require[s] aid in coping with legal problems or assistance in meeting his adversary." *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2011) (quoting *United States v. Ash*, 413 U.S. 300, 311 (1973); *Mempa v. Rhay*, 389 U.S. 128, 134–35 (1967)). Second, "[t]o justify a particular stage as 'critical,' th[is] Court has not required [a] defendant to explain how having counsel would have altered the outcome of his specific case. Rather, th[is] Court has

---

[5] *See, e.g.*, *Estelle v. Smith*, 451 U.S. 454, 470 (1981) (court-ordered psychiatric examinations); *Geders v. United States*, 425 U.S. 80, 91 (1976) (overnight recess between direct and cross examination of defendant); *Herring v. New York*, 422 U.S. 853, 858 (1975) (closing summation); *Massiah v. United States*, 377 U.S. 201, 205–06 (1964) (post-indictment interrogations); *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961) (arraignments); *United States v. Russell*, 205 F.3d 768, 772 (5th Cir. 2000) (testimony implicating defendant in conspiracy presented during counsel's two-day absence due to illness); *Tucker v. Day*, 969 F.2d 155, 159 (5th Cir. 1992) (constructive absence of counsel at re-sentencing hearing); *Gomez v. Thaler*, 526 F. App'x 355, 359 n.3 (5th Cir. 2013) (hinting, but declining to hold in the habeas context, that a suppression hearing is a critical stage in a criminal proceeding).

looked to whether 'the substantial rights of a defendant may be affected' during that type of proceeding." *Burdine v. Johnson,* 262 F.3d 336, 347 (5th Cir. 2001) (en banc) (quoting *United States v. Taylor*, 933 F.2d 307, 312 (5th Cir. 1991)); *see also Mempa*, 389 U.S. at 134. For this reason, "[s]entencing is a critical stage of a criminal proceeding." *Taylor*, 933 F.2d at 312.

Pleitez pleaded guilty to conspiracy to engage in sex trafficking of children or by force, fraud or coercion, in violation of 18 U.S.C. § 1594(c). Pursuant to 18 U.S.C. § 1593(a), mandatory restitution applied to Pleitez's sentence. Under the mandatory restitution provision, Pleitez was required "to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses, as determined by the court." 18 U.S.C. § 1593(b)(1); *see also* 18 U.S.C. § 3664(f)(1)(A). The "full amount of the victim's losses" includes "the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." 18 U.S.C. § 1593(b)(3). This Circuit recognizes that mandatory restitution is a criminal penalty and part of a criminal sentence. *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004).

An order of restitution under § 1593 is "issued and enforced in accordance with section 3664." 18 U.S.C. § 1593(b)(2). In order to assist the trial court in determining mandatory restitution owed to victims, § 3664 requires the probation officer to complete a PSR. The PSR must contain sufficient information for the court to order restitution, including "a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant." 18 U.S.C. § 3664(a); *see also* Fed. R. Crim. P. 32(c)(1)(B). The PSR must be disclosed to the criminal defendant and the government attorney. *See* 18 U.S.C. § 3664(b); Fed. R. Crim. P. 32(i)(1). One purpose of the disclosure

rule is to give a criminal defendant an opportunity to ensure that the report is "completely accurate in every material respect." *United States v. Missio*, 597 F.2d 60, 61 (5th Cir. 1979) (citation omitted). But the determination of restitution does not end there. Section 3664 further contemplates the possibility of increased restitution determinations after sentencing:

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing. If the victim subsequently discovers further losses, the victim shall have 60 days after discovery of those losses in which to petition the court for an amended restitution order. Such order may be granted only upon a showing of good cause for the failure to include such losses in the initial claim for restitutionary relief.

18 U.S.C. § 3664(d)(5). The statute provides further guidance to courts when determining the amount of restitution owed: "After reviewing the report of the probation officer, the court may require additional documentation or hear testimony" in calculating a final determination of restitution. *Id.* § 3664(d)(4).

While the statute does not explicitly require a hearing for increased restitution awards, it does imply that a defendant is entitled to an opportunity to be heard. Section 3664 states that "[a]fter reviewing the report of the probation officer, the court *may* require additional documentation or hear testimony." *Id.* § 3664(d)(4) (emphasis added). The permissive tone seems to suggest that a district court has discretion to provide an opportunity to respond to a PSR. But ultimately, we do not believe that this language grants the district court discretion to increase a restitution award outside the presence of the defendant and counsel. Indeed, § 3664 elsewhere implies that a hearing is required before accepting the restitution recommendation in a PSR. Before issuing a final restitution determination, the sentencing court must resolve restitution issues, including any objections raised by a defendant. *See id.*

§ 3664(e) ("Any dispute as to the proper amount or type of restitution [is] resolved by the court by the preponderance of the evidence."). And as Pleitez argues, § 3664 requires a court to "set a date for the final determination of the victim's losses" before increasing the restitution award, implying that a defendant should be afforded the opportunity to be heard before a court adopts a PSR's recommendation. *Id.* § 3664(d)(5). Furthermore, Rule 32(i) governing sentencing requires that a court "verify that the defendant *and the defendant's attorney* have read and discussed the presentence report *and any addendum* to the report." Fed. R. Crim. P. 32(i)(1)(A) (emphasis added). Thus, the statutory scheme requires a district court provide a criminal defendant with an opportunity to be heard before imposing mandatory restitution.

We conclude that the final determination of a mandatory restitution award under § 3664(d)(5) constitutes a critical stage during which a defendant is entitled to the assistance of counsel. A defendant filing objections to a PSR addendum "require[s] aid in coping with legal problems or assistance in meeting his adversary." *McAfee*, 630 F.3d at 391. Before a court makes a final determination of the victim's losses, a defendant requires the assistance of counsel to confront the Government in the sentencing process, thereby ensuring the PSR's accuracy. A final determination of a restitution award also implicates a defendant's substantial rights. An order of restitution is part of the sentencing process; a defendant has a constitutional right "at the final sentencing" to "respond to a definitive decision of the judge." *United States v. Moree*, 928 F.2d 654, 655–56 (5th Cir. 1991) (quoting *United States v. Behrens*, 375 U.S. 162, 168 (1963) (Harlan, J., concurring)); *see also Caille v. United States*, 487 F.2d 614, 616 (5th Cir. 1973). Similarly, a defendant has a right to be present if the court modifies a sentence to make it more onerous. *United States v. Clark*, 816 F.3d 350, 355 (5th Cir. 2016) ("[T]he presence of the defendant usually is not required, unless the modification makes the sentence

more onerous.") (quoting *Moree*, 928 F.2d at 655–56). At a final determination of restitution, a defendant is thus entitled to the assistance of an attorney who plays the adversarial role necessary to ensure that the proceeding itself is fair. *See Strickland*, 466 U.S. at 685, 691–92. Where a court increases a mandatory restitution award, a defendant is entitled to the assistance of counsel.

The Government disputes that Pleitez was denied access to counsel at a critical stage of trial proceedings, but its arguments are unpersuasive. First, the Government argues that Pleitez could have asked for a hearing or filed objections to the amended order of restitution or amended judgment. But Pleitez was not appointed counsel until the day the court entered the amended judgment. Once the district court imposed its sentence, it was too late for Pleitez to challenge the PSR's findings. *See United States v. Engs*, 884 F.2d 894, 896–97 (5th Cir. 1989). Second, the Government argues that the order did not affect any substantial rights because Pleitez cannot show he would have received less punishment in the restitution order. However, Pleitez need not show a different outcome if the entry of an amended judgment based on a new restitution recommendation was a critical stage. *See Cronic*, 466 U.S. at 659. Restitution is a criminal sentence. The new restitution award in this case imposed a greater penalty than what was disputed at the sentencing hearing ($113,790 as opposed to $90,110), and Pleitez was denied any opportunity to dispute the calculation of restitution in the Fourth Addendum with the assistance of counsel.

Finally, the Government argues that the amount of restitution was fully vetted between the parties at the sentencing hearing, and Pleitez was represented by counsel throughout the proceedings and filed objections to every previous PSR addendum. Thus, Pleitez was not denied the assistance of counsel. Underlying this argument is an assumption that the Fourth Addendum merely affirmed the earlier restitution recommendation based on

the original method of computation. But the Fourth Addendum went beyond the recommendation presented at the sentencing hearing—it increased the restitution award based on a new method of calculation that was not previously presented to the defendant or the court. Through the Third Addendum, the probation officer's restitution recommendation relied on the assumption that the victims were earning minimum wage under the FLSA. Under the Fourth Addendum, for the first time, the award was based on an estimate of the victims' *actual earnings* by computing the amount charged for each sex act multiplied by an estimated number of customers. On appeal, Pleitez offers an example of how this new calculation might be inaccurate. He claims that were he given the opportunity, he would have presented evidence showing that "the prostitutes received half (50%) of the gross receipts" from the services they performed and thus the restitution amount for lost wages should be reduced by half. Pleitez could not have made this argument when the PSR calculated restitution under the FLSA. After the Fourth Addendum, however, this argument was available. We cannot fairly say he was represented when the new restitution recommendation was considered and accepted by the district court.

### III. CONCLUSION

Because Pleitez did not have a lawyer when the district court considered and accepted the Fourth Addendum to the PSR containing a more onerous restitution award, he was effectively denied any opportunity to object or allocute when his sentence was enhanced. Under this Court's precedent, this was a critical stage of the trial proceedings, and Pleitez was denied effective assistance of counsel. Restitution is a part of sentencing, which is a critical stage of the trial proceedings. By issuing a more onerous restitution award based on a new method of computation in the Fourth Addendum, the district court increased Pleitez's sentence outside the presence of the defendant or

defendant's counsel. Pleitez's substantial rights were at issue—he faced a criminal sentence—and he required the assistance of counsel in a trial-like setting—sentencing. The entry of a final restitution order that imposes a more onerous award thus constitutes a "critical stage" of proceedings where a defendant requires the assistance of counsel. Accordingly, Pleitez was entitled to representation, and his Sixth Amendment right to counsel was violated. On remand, the district court should either modify the restitution award to reflect the original amount for $90,110, or appoint Pleitez counsel and allow him to argue against the increased restitution award.

For the foregoing reasons, the district court's entry of final judgment and restitution order are VACATED. We REMAND this case for further proceedings consistent with this opinion.